# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ASHISH GUPTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12 C 7855 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| | ) | |
| CORRECTIONAL OFFICER RANDY L. OWENS, WILL COUNTY SHERIFF'S OFFICE; OFFICER RICKY KRAKOW #7825, NAPERVILLE POLICE DEPARTMENT; CORRECTIONAL OFFICER TODD WITTMAYER, WILL COUNTY SHERIFF'S OFFICE; CORRECTIONAL OFFICER MIKE JANOVYAK, WILL COUNTY SHERIFF'S OFFICE; CORRECTIONAL OFFICER JAMES PATRAS, WILL COUNTY SHERIFF'S OFFICE; JOSHUA LANE, WILL COUNTY SHERIFF'S OFFICE, in their individual capacities; WILL COUNTY SHERIFF'S OFFICE, and THE COUNTY OF WILL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for their alleged violations of his Fourth Amendment rights and for state-law false imprisonment. The case is before the Court on the Federal Rule of Civil Procedure ("Rule") 56 motions for summary judgment of defendants Krakow,

Owens, Will County,[1] and the Will County Sheriff's Office.[2] For the reasons set forth below, the Court grants the motions.

**<u>Local Rule 56.1</u>**

Local Rule 56.1 requires a party moving for summary judgment to provide "a statement of material facts as to which [he] contends there is no genuine issue." (Local R. 56.1(a)(3).) It also requires the opposing party to file "a concise response to the movant's statement" that includes, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." (Local R. 56.1(b)(3)(B).) In addition, it states that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." (Local R. 56.1(b)(3)(C).)

Together with their motion for summary judgment, defendants served on plaintiff a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by the Court's Local Rules and circuit precedent. (*See* Notice Pro Se Litigant, ECF No. 157.) The notice explained in detail the requirements of Local Rule 56.1 and warned plaintiff of the consequences of failing to controvert the facts set forth in the moving parties' statements. (*See id.*) Despite the warning, plaintiff did not file a response to defendants' Local Rule 56.1 Statements. Accordingly, the Court deems him to have admitted all of the properly-supported facts defendants assert in those Statements. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil

---

[1]Plaintiff's only basis for suing Will County is that it is "the entity responsible to pay any judgment against the Will County Sheriff's Office." (Fifth Am. Compl. ¶ 12.)

[2]Defendant Patras was previously dismissed from this suit. (*See* 10/28/14 Stipulation Dismissal, ECF. No. 104.) Defendants Wittmayer, Janovyak, and Lane do not seek summary judgment.

2

procedure."); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1108 (7th Cir. 2004) ("We have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.") (alteration and quotation omitted).

## Facts

**2010**

On July 3, 2010, employees of the Starbucks in the Showplace Shopping Center in Naperville, Illinois called the Naperville police about a "suspicious/unwanted subject inside the Starbucks." (Krakow's LR 56.1(a) Stmt. ¶¶ 6-7.) The "subject" was plaintiff, and Jessica Bouldin was one of the Starbucks employees who "witnessed him trespassing." (*Id.* ¶¶ 6, 8-9) (quotation omitted). Plaintiff was arrested and issued a non-traffic complaint and notice to appear for violation of City of Naperville Ordinance Section 10-2-4-1, Criminal Trespass to Land. (*Id.* ¶ 6.)

On August 11, 2010, Starbucks served plaintiff with a Notice of Expulsion and Warning against Trespassing, prohibiting him from returning to the Starbucks in the Showplace Shopping Center. (*Id.* ¶ 11.) Bouldin was present when plaintiff was given the no trespassing document. (*Id.*)

Between plaintiff's July 3, 2010 arrest and October 1, 2010, Bouldin saw plaintiff in the Starbucks' parking lot ten to twelve times. (Krakow's LR 56.1(a) Stmt. ¶ 22.) "She felt uncomfortable and unsafe each time she saw him." (*Id.*)

On the evening of October 1, 2010, during a break from her work at Starbucks, Bouldin sat with two friends on a bench outside of the store. (*Id.* ¶ 12.) She saw plaintiff drive into the Starbucks parking lot, directly past where she was sitting. (*Id.*) Plaintiff parked his car and then re-

3

parked it twice, each time moving it closer to Bouldin. (*Id.* ¶ 13.) The last spot was two or three spaces away from where Bouldin was sitting, and Bouldin would have to pass it to return to work. (*Id.*)

Bouldin said she was scared and thought plaintiff was trying to harass her because she was a witness in the trespass case against him. (*Id.* ¶ 14.) Bouldin asked the Starbucks manager to call 911. (*Id.* ¶ 15.) Then, without ever having left his car, plaintiff left the parking lot, driving "real slow" next to the bench where Bouldin was sitting. (*Id.* ¶¶ 15, 18) (quotation omitted).

Defendant Krakow responded to the 911 call and spoke to Bouldin. (*Id.* ¶ 16.) Bouldin told him what she had seen, and said she assumed plaintiff had seen her and that was why he moved his car closer to the bench. (*Id.* ¶¶ 17-18.) Bouldin told Krakow that "she was concerned for her safety[,] . . . and that she had been involved in a prior incident with [plaintiff] and was a witness in that case," which was still pending. (*Id.* ¶¶ 19, 21) (citations omitted). Krakow said Bouldin also told him that plaintiff had taken a picture of her with his cell phone. (*Id.* ¶ 20.)

Krakow contacted plaintiff, who agreed to meet Krakow at a 7-Eleven in the area that night. (*Id.* ¶ 24.) "As a result of his actions in the parking lot the night of October 1, 2010, and his interaction with . . . Bouldin," Krakow arrested plaintiff at the 7-Eleven for disorderly conduct. (*Id.* ¶¶ 24, 28.)

After arresting plaintiff, Krakow searched him, found his cell phone, and kept it "as having possible photographic evidence that [plaintiff] was at Starbucks on October 1, 2010." (*Id.* ¶ 26.)

The next day, defendant Owens was working as a correctional officer at the Will County Adult Detention Center. (Owens' LR 56.1(a) Stmt. ¶¶ 4, 15-16.) At around 11:00 a.m., Owens took plaintiff from a group cell to a room for fingerprinting and then to a booking window to complete

his discharge paperwork. (*Id.* ¶ 21.) While at the booking window, plaintiff questioned booking personnel about the necessity of signing some of the paperwork, and then got into an argument with Owens. (*Id.* ¶ 22.) During the argument, plaintiff raised his right hand, in which he was holding a pen, pointed at Owens, and called Owens a "thug with a badge." (*Id.*) (quotation omitted). Owens grabbed plaintiff's right hand, knocked the pen out of it, put plaintiff's right arm in a rear wristlock, and, with the help of correctional officer Mario Calderon, walked plaintiff to an isolation holding cell. (*Id.* ¶¶ 23-24.)

When they got to the holding cell, plaintiff was placed chest first against the wall adjacent to the cell while Calderon opened the cell door. (*Id.* ¶ 25.) When the door was open, plaintiff was walked into the cell and placed on his knees with his chest against a cell wall. (*Id.* ¶ 26.) At that point, correctional officer Carter joined Owens and Calderon in the holding cell. (*Id.* ¶ 28.)

As the officers started to leave the cell, plaintiff started to stand up and turned his body toward the cell door. (*Id.* ¶ 29.) Carter then put plaintiff chest first against the cell wall and then on the cell floor. (*Id.* ¶ 30.) Owens stood above plaintiff near plaintiff's legs. (*Id.* ¶ 32.) Calderon and Carter pulled plaintiff's arms from underneath his body and put them behind his back to keep plaintiff from getting up or moving around when the officers again tried to leave the cell. (*Id.* ¶ 34.)

When the officers tried to leave the second time, the cell door to the booking area became stuck, forcing the officers to use another cell door, which opened into a sally port. (*Id.* ¶ 35.) While the officers waited for that door to be opened and walked through it, Carter pointed the laser of his Taser gun at the cell floor next to plaintiff's head to keep him from moving. (*Id.* ¶ 36.) The officers left the cell without further incident. (*Id.* ¶ 38.)

**2012**

On August 15, 2012, plaintiff was arrested for an unspecified offense. The next day, he attended court at 1:30 p.m., but his mittimus and bond information, which must be physically picked up by correctional officers after court adjourns and taken back to the detention facility, were not received and entered into the Will County Adult Detention Center's database until 4:49 p.m. (Owens' LR 56.1(a) Stmt. ¶¶ 46, 48.) Once the bond information was received, the Detention Center began the administrative release process whish usually takes two to three hours to complete and which includes a computer search for new warrants, locating and returning money and personal effects to the detainee, preparing documents telling the detainee about his next court appearance, verifying the detainee's identity, and reviewing the release paperwork for errors. (*Id.* ¶¶ 49-50.) On this date, plaintiff was detained for fifty-four minutes after his bond was posted. (*Id.* ¶ 46.)

On August 27, 2012, plaintiff was arrested again, appeared in Will County Circuit Court, and was remanded to the custody of the Will County Sheriff's Office at 12:31 p.m. (*Id.* ¶ 47.) It took until 4:37 p.m. for plaintiff to get transported to the Detention Facility and complete the booking process and for staff to enter plaintiff's bond information into the database. (*Id.*) Once that information was received, the administrative release process began, and it was completed an hour and twenty minutes after plaintiff's bond was posted. (*Id.*)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the

matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I of the fifth amended complaint, plaintiff alleges that Owens used excessive force against him during his October 2010 detention. To defeat Owens' motion on this claim, plaintiff must offer evidence that suggests Owens "purposely or knowingly" used "objectively unreasonable" force against him. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Plaintiff has offered no such evidence, and the record reveals none. Accordingly, the Court grants Owens' motion for summary judgment on Count I.

In Count II, plaintiff alleges that Krakow unlawfully arrested him on October 1, 2010. To defeat Krakow's motion on this claim, plaintiff must offer evidence that suggests Krakow did not have probable cause to arrest plaintiff. *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). "Probable cause exists if an officer reasonably believes, in light of the facts known to him at the time, that a suspect had committed or was committing an offense," even if "it is not the crime with which the officer[] initially charge[s] the suspect." *Id.* at 638-39 (quotations omitted). Moreover, if Krakow did not have probable cause, "but a reasonable officer could have mistakenly believed that probable cause existed," he is entitled to qualified immunity on the arrest claim. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).

The record shows that, when Krakow arrested plaintiff, he knew that: (1) Starbucks had previously given plaintiff a notice against trespassing; (2) Bouldin saw plaintiff drive into the Starbucks parking lot, directly past where she was sitting, and then re-park his car twice so that it

7

was closer to her; (3) when he was parked in the Starbucks lot, plaintiff took a picture of Bouldin with his cell phone; and (4) Bouldin was concerned for her safety because she was a witness in a pending criminal case against plaintiff. These facts are sufficient to give Krakow probable cause or arguable probable cause to arrest plaintiff for disorderly conduct. *See* City of Naperville Municipal Code § 10-2-1-1(2) ("A person commits disorderly conduct when he knowingly: . . . [d]oes or makes any unreasonable or offensive act, utterance, gesture or display which, under the circumstances, creates a clear and present danger of a breach of peace or imminent threat of violence."). Thus, the Court grants Krakow's motion for summary judgment on the false arrest claim.

In Count II, plaintiff also alleges that Krakow illegally searched him and seized his cell phone following the arrest. The Supreme Court has held, however, that it is lawful for a police officer to conduct a warrantless search of "[an] arrestee's person and the area within his immediate control," *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (quotation omitted), and "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction," *Chimel v. California*, 395 U.S. 752, 763 (1969), *abrogated on other grounds*, *Davis v. United States*, 564 U.S. 229 (2011). The record shows that is what Krakow did. Therefore, the Court grants his motion for summary judgment on plaintiff's search and seizure claim.

In Count IV,[3] plaintiff seeks to hold the Will County Sheriff's Office liable for the non-moving defendants' alleged use of excessive force.[4] A municipal entity like the Sheriff's Office can

---

[3]Count III is only asserted against the non-moving defendants.

[4]Plaintiff's claim that the Sheriff's Office is liable for Owens' use of excessive force fails because, as discussed above, the record does not suggest that Owens used such force against plaintiff.

8

be held liable under § 1983 only if the alleged constitutional violation was the result of one of its policies or practices; that is, an express policy, a practice with the force of law, or action by a final policymaker. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Plaintiff offers no evidence that suggests any such policy existed. Accordingly, the Court grants the Sheriff's Office's motion for summary judgment.

In Count V, plaintiff alleges a state-law claim for false imprisonment against the Will County Sheriff's Office for its detention of him after his bond had been posted. "[T]o succeed on [such] a claim . . . , a plaintiff must show that he was restrained unreasonably . . . ." *Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 837 (Ill. App. Ct. 2006). Plaintiff has made no such showing. On the contrary, the record shows that the Sheriff's Office release process after bond is posted generally takes two to three hours and includes physically receiving the detainee's mittimus and bond information from the court after it has adjourned, conducting a computer search for new warrants, locating and returning the detainee's money and personal effects, preparing documents regarding the detainee's next court appearance, verifying the detainee's identity, and reviewing the release paperwork for errors. The record also establishes that plaintiff was detained for fifty-four minutes after his bond was posted on August 16, 2012, and an hour and twenty minutes after his bond was posted on August 27, 2012. (*Id.* ¶ 46.) Given the tasks that must be accomplished before a detainee is released on bond, the amount of time that the process usually takes, and the fact that plaintiff's releases were processed in a fraction of the usual time, the Court finds that there is no triable fact issue as to the reasonableness of plaintiff's post-bond detentions.

## Conclusion

For the reasons set forth above, the Court grants the summary judgment motions of Krakow [142], and Owens, the Will County Sheriff's Department, and Will County [153]. The only claim remaining in this suit is the Count III § 1983 excessive force claim against defendants Wittmayer, Janovyak, and Lane. The case is set for a status hearing on February 16, 2016 at 9:30 a.m.

**SO ORDERED.**                                **ENTERED:  February 8, 2016**

_____
**HON.  JORGE L. ALONSO**
**United States District Judge**